UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KYLE KANTNER,

    Plaintiff,                  :        Case No. 2:19-cv-4250

    -vs-                        Judge Sarah D. Morrison
                                Magistrate Judge Kimberly A. Jolson

TRAVELERS CASUALTY AND
SURETY CO. OF AMERICA,

                            :

    Defendant.

## OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff

Kyle Kantner and Defendant Travelers Casualty and Surety Company of America. (ECF Nos.

14, 15.) For the reasons that follow, the Court **DENIES** Plaintiff's Motion and **GRANTS**

Defendant's Motion.

## I.    BACKGROUND

The facts in this case are relatively undisputed.

On August 1, 2015, Defendant Travelers Casualty and Surety Company of America

("Travelers") issued Insurance Policy No. 069-LB-105651376 hereafter referred to as the

"Policy" to non-party Air Waves, Inc., for the period of August 1, 2015 to August 1, 2017. (Pl.

Ex. 1, 10, ECF No. 15-2.) The Policy provided coverage, "subject to its terms, conditions,

limitations and exclusions, for Claims first made during the Policy Period against the Insureds

for Wrongful Acts." (Def. Ex. C, 1, ECF No. 14-3.) Plaintiff Kyle Kantner (an employee, officer,

and shareholder of Air Waves during the Policy period) and Air Waves were both named as

Insureds under the Policy. (Pl. Ex. 1, 10; Kantner Decl., ¶¶ 4, 5, ECF No. 15-1.)

### A.    Leaventon Lawsuit

On May 16, 2017, Michael Leaventon (former Chief Operating Officer, Secretary, Board Member, and 37.5% owner of Air Waves) filed a lawsuit in the Franklin County Court of Common Pleas, Case No. 17-CV-004495, alleging one count of breach of contract against Air Waves[1] and one count of indemnification against Mr. Kantner and Air Waves. (Def. Ex. A, ECF No. 14-1; Def. Ex. B, ECF No. 14-2.)

According to Mr. Leaventon's complaint, an interested party contacted Air Waves in 2015 about purchasing the business for $17 million. (Def. Ex. A, ¶ 8.) At the time, Mr. Kantner, David Kaiser (25% shareholder of Air Waves), and Mr. Leaventon were discussing a possible buyout of Mr. Leaventon's shares. (*Id.* ¶¶ 7, 9.) After keeping Mr. Leaventon in the dark during the negotiations for the sale of Air Waves, Mr. Kantner e-mailed Mr. Leaventon in January 2016 to tell him the sale had fallen through and that Mr. Leaventon "needed to provide his number for a buyout of his shares." (*Id.* ¶¶ 10–11.) Mr. Kantner told Mr. Leaventon he believed Mr. Leaventon's shares were worth $3 million but would only pay $2 million. (*Id.* ¶ 12.) When Mr. Leaventon called the potential buyer to ask about the deal falling through, the potential buyer referred him to Mr. Kantner, who told Mr. Leaventon that if he did not take the buyout deal, Mr. Kantner would fire him and never sell the company. (*Id.* ¶ 13.)

On February 12, 2016, Mr. Leaventon, Mr. Kantner, and Mr. Kaiser executed a redemption agreement, under which Air Waves bought Mr. Leaventon's shares. (*Id.* ¶ 14.) Under the redemption agreement, Air Waves represented that it had not withheld information relating to the potential sale of the company or its assets from Mr. Leaventon. (*Id.* ¶ 15.) However,

---

[1] The Leaventon Lawsuit refers to Air Waves as "KDAE, Inc.," which is what Air Waves changed its name to in November 2016. (Def. Ex. B, ECF No. 14-2.) For the purpose of this Opinion, the Court will refer to both entities interchangeably as "Air Waves."

according to Mr. Leaventon, Air Waves did withhold information relating to the potential sale of

the company; the deal with the potential buyer never fell through but instead Mr. Kantner and

Air Waves concealed material information from Mr. Leaventon about the sale to induce him to

sell his shares at a depressed price. (*Id.* ¶ 16.) Ultimately, Air Waves sold its assets for over $17

million. (*Id.* ¶ 18.) Had Mr. Leaventon been a shareholder at the time of closing, he would have

received much more money than he received for his stock under the redemption agreement. (*Id.* ¶

19.) Had he known about the potential sale before execution of the agreement, he would either

"not have agreed to sell his shares or would have required a much higher price." (*Id.* ¶ 20.)

Count one of the Leaventon Lawsuit sought monetary damages from Air Waves for

breaching the redemption agreement by withholding information concerning a potential sale of

the company. (*Id.* ¶¶ 22–25.) The second count, the indemnification claim, sought to enforce

section 6.2 of the redemption agreement, requiring Air Waves and Mr. Kantner to reimburse Mr.

Leaventon for all reasonable attorney fees and costs arising out of Air Waves' breach of the

redemption agreement. (*Id.* ¶¶ 27–29.)

### B.      Relevant Policy Language

Several days after the filing of the Leaventon Lawsuit, Mr. Kantner contacted Travelers

and requested that it defend him against Mr. Leaventon's indemnification claim pursuant to the

"Private Company Directors and Officers Liability" section (hereafter referred to as "D&O

Coverage") of the Policy. (Kantner Decl., ¶ 11.) Under the Policy, Travelers has the right and

duty to defend any claim covered by a liability coverage, such as the D&O Coverage. (Pl. Ex. 1.)

The D&O Coverage provides that Travelers will pay on behalf of:

> A. the Insured Persons, Loss for Wrongful Acts, except for Loss which the
> Insured Organized pays to or on behalf of the Insured Persons as
> indemnification;

> B. the Insured Organization, Loss for Wrongful Acts which the Insured Organization pays to or on behalf of the Insured Persons as indemnification; and
>
> C. the Insured Organization, Loss for Wrongful Acts,

resulting from any Claim first made during the Policy Period[.]

(*Id.* at 48.) Under the Policy, a "Claim" includes "a civil proceeding commenced by service of a complaint or similar pleading." (*Id.*) A "Wrongful Act" is defined in part as "any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, an Insured Person in his or her capacity as such." (*Id.* at 50.) "Loss" includes "Defense Expenses and money which an Insured is legally obligated to pay as a result of a Claim." (*Id.* at 49.) There is no dispute that Mr. Kantner is an "Insured Person" and Air Waves is an "Insured Organization" under the Policy. (*Id.*)

Acknowledging that "the [Leaventon] Complaint appears to constitute a Claim for a Wrongful Act as defined by the Policy," Travelers nevertheless refused to defend Mr. Kantner in the Leaventon Lawsuit, citing two exclusions in the Policy. (Def. Ex. C, 3.)

The first cited exclusion falls under Section IV.A.9 of the Policy and precludes coverage as follows:

> 9. The Company will not be liable for Loss for any Claim by or on behalf of, or in the name or right of, any Insured[.]

(Pl. Ex. 1, 52.) According to Travelers, because the action was brought by Mr. Leaventon, who was an officer and board member of Air Waves until February 2016, he constitutes an Insured under the Policy and the Policy does not afford coverage for any Claim brought by an Insured unless one of the exceptions to the exclusion applies, which it does not. (Def. Ex. C, 4.) Mr. Kantner contends that the exception described in subsection (b) applies to exempt him from the

exclusion.[2]

The second exclusion cited by Travelers falls under Section IV.A.13 of the Policy and precludes coverage as follows:

> 13. The Company will not be liable for Loss for any Claim, with respect to Insuring Agreement C. only:
>
>    \*\*\*
>
> e. for any liability of the Insured Organization under any express contract or agreement. For purposes of this exclusion, an express contract or agreement is an actual agreement among the contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making.

(*Id.* at 53.) Insuring Agreement C refers to Travelers's agreement to pay on behalf of Air Waves for "Loss for Wrongful Acts." (*Id.* at 48.) According to Travelers, the Leaventon Lawsuit asserts a claim against "Defendants" for breach of contract and this exclusion provides that the Policy "will not respond to a claim against the Insured Organization under any express contract or agreement." (Def. Ex. C., 5.) Travelers now clarifies that this exclusion only applies to preclude coverage to Air Waves for the breach of contract claim, not the indemnification claim against Mr. Kantner. (Def. Response, 3–4, ECF No. 20.)

The Leaventon Lawsuit was settled on March 11, 2019. (Kantner Decl., ¶ 19.) Travelers did not participate in settlement discussions. (*Id.* ¶ 18.)

### C.    Procedural History

On August 29, 2019, Mr. Kantner filed an amended complaint in the Delaware County Court of Common Pleas alleging claims for (1) declaratory judgment; (2) breach of contract; and (3) bad faith. (ECF Nos 1-1, 5.) On September 24, 2019, Travelers removed the case to this

---

[2] Subsection (b) is discussed *infra*.

Court pursuant to 28 U.S.C. §§ 1332, 1441.[3] (ECF No. 1.) Travelers filed an Answer on October 1, 2019. (ECF No. 6.)

On May 15, 2020, the parties filed cross-motions for summary judgment. (ECF Nos. 14, 15.) Both sides filed their respective responses on June 15 (ECF Nos. 20, 21), and reply briefs on July 6 (ECF Nos. 26, 27.) The cross-motions are now ripe for review.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of "identifying those parts of the record that demonstrate an absence of any genuine issue of material fact." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The burden then shifts to the nonmoving party to "'set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). The non-moving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan*, 578 F.3d at 374.

When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence

---

[3] Travelers is a Minnesota corporation with its principal place of business in Connecticut. (Amend Compl., ¶ 1, ECF No. 4; Pl. Ex. 1, ECF No. 15-2.) Mr. Kantner is an Ohio resident. (Amend Compl., ¶ 2.)

is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477

U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986) (concluding that summary judgment is appropriate when the evidence could not lead the

trier of fact to find for the non-moving party).

### III.   ANALYSIS

Both parties agree that the only issue before the Court on the cross-motions for summary

judgment is whether Travelers had a duty to defend Mr. Kantner in the Leaventon Lawsuit. The

Court finds that as a matter of law, it did not. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v.*

*Paterson*, 417 F. Supp. 3d 888, 893 (N.D. Ohio 2019) ("[I]nterpretation of an insurance contract

involves a question of law to be decided by a judge." (internal quotations omitted)).

Under Ohio law,[4] insurance contracts are construed like any other written contract. *Scott*

*v. Allstate Indem. Co.*, 417 F. Supp. 2d 929, 932 (N.D. Ohio 2006). "An insurance contract will

only require interpretation if the applicable language is ambiguous—that is, open to more than

one interpretation." *Id.* When there is determined to be ambiguous language within an insurance

contract, such language must be "construed strictly against the insurer and liberally in favor of

the insured." *Id.* However, "liberal construction cannot be used to create an ambiguity where one

does not exist." *Id.* "If the terms of a policy are clear and unambiguous, a court must enforce the

contract as written, giving words used in the contract their plain and ordinary meaning." *Id.* at

933. It follows then, "where an exclusionary clause in an insurance contract is unambiguous,

Ohio law requires that the plain language of the clause be given effect." *Id.*

Mr. Kantner argues that under the D&O Coverage, the Policy provides that he was an

---

[4] "When an insurance contract predicated upon diversity jurisdiction is before [the] Court, the substantive law of the forum state, the state in which the lawsuit was filed, must be applied." *Paterson*, 417 F. Supp. 3d at 893.

Insured Person who sustained a loss from a claim asserted against him in the Leaventon Lawsuit

and the Policy obligated Travelers to defend him and pay for his loss. Travelers argues that

Section IV.A.9 of the Policy precluded coverage of Mr. Leaventon's indemnification claim. Mr.

Kantner responds that exception (b) to the cited exclusion operates to bring him back within the

Policy's coverage. Section IV.A.9.b of the Policy provides:

> 9. The Company will not be liable for Loss for any Claim by or on behalf of, or
> in the name or right of, any Insured; provided that this exclusion will not apply
> to:
>
>     ***
>
> b. any Claim in the form of a crossclaim, third party claim or other claim for
> contribution or indemnity by an Insured Person and which is part of or results
> directly from a Claim which is not otherwise excluded by the terms of this
> Liability Coverage[.]

To begin, there is no dispute that Air Waves, Mr. Kantner, and Mr. Leaventon were all

Insureds under the Policy during the relevant period. Travelers also does not dispute that but for

Section IV.A.9, it would have a duty to defend Mr. Kantner in the Leaventon Lawsuit. (*See* Def.

Ex. C, 3.) Further, the term "Claim" as used throughout Section IV.A.9 undoubtedly means in

part,[5] "a civil proceeding commenced by service of a complaint or similar pleading." (Pl. Ex. 1,

48.) With that in mind, the Court agrees with the parties that Section IV.A.9.b is not ambiguous.

A plain reading of the Section IV.A.9 exclusion provides that Travelers is not liable

under the Policy for any loss resulting from Mr. Leaventon's Lawsuit, because he is an Insured,

unless one of the six delineated exceptions applies. The only reasonable interpretation of

exception (b) is the one argued for by Travelers.

Exception (b) provides that Travelers will cover claims for indemnity by Insureds, like

---

[5] There are seven other definitions of "Claim" included in the D&O Coverage of the
Policy that neither side cites as applicable to the issue before the Court. (Pl. Ex. 1, 48–49.)

Mr. Leaventon, if such indemnity claim is "part of or results directly from a Claim which is not otherwise excluded by the terms of this Liability Coverage." (Pl. Ex. 1, 52.) An indemnity claim by an Insured is covered if it stems from a "civil proceeding commenced by service of a complaint" that is covered by the Policy. Here, the indemnification claim stems from Mr. Leaventon's breach of contract claim against Air Waves in the same civil proceeding, i.e., Franklin County Case No. 17-CV-004495 (*See* Def. Ex. A, ¶¶ 27–29 (citing section 6.2 of the redemption agreement as entitling Mr. Leaventon to reimbursement by Mr. Kantner for his attorney fees and expenses arising out of Air Waves' breach of the redemption agreement).) Mr. Kantner does not dispute (nor could he reasonably) that Mr. Leaventon's breach of contract claim against Air Waves is precluded from coverage under Section IV.A.13 of the Policy. Thus, Mr. Leaventon's indemnification claim is not covered by exception (b).

Mr. Kantner argues that exception (b) should be read to mean that as long as the indemnity claim is part of a "civil proceeding," the indemnity claim "is part of or results directly from a Claim which is not otherwise excluded by the terms of the Liability Coverage." (Pl. Ex. 1, 52; *see* Pl. Reply, 5, ECF No. 27.) Mr. Kantner contends that, because the definition of "Claim" in the Policy does not include "cause of action," whether or not the breach of contract claim is covered under the Policy should have no effect on whether the indemnity claim is covered. This argument ignores that a "civil proceeding" is by its nature a collection of the causes of action contained in the complaint, and that indemnity claims by their nature, are derivative. *See, e.g., Stengel v. Columbus*, 600 N.E.2d 248, 251 (Ohio Ct. App. 10th Dist. 1991) (explaining that the right of indemnity is collateral to the underlying claim which gives rise to the right). Because the breach of contract claim is not covered by the Policy, the only cause of action left in Mr. Leaventon's complaint or "civil proceeding" is the indemnity claim. Thus, Mr. Kantner is

9

essentially arguing that the Court should find that the indemnity claim is covered because it is

"part of or results directly" from itself. This interpretation of Section IV.A.9.b is illogical and

certainly cannot be what the parties intended. *See Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256,

1261 (Ohio 2003) (Courts "examine[] the insurance contract as a whole and presume that the

intent of the parties is reflected in the language used in the policy.").

Moreover, interpreting exception (b) as Mr. Kantner requests would render the second

clause of subsection (b) superfluous—that is, all indemnity claims brought by Insureds would be

blanketly covered, regardless of whether they are "part of or result[] directly from a Claim which

is not otherwise excluded by the terms of this Liability Coverage," because they would all be

claims presented in a civil proceeding. Courts must "generally seek to avoid interpreting

contracts to contain superfluous words." *Shanesville Invests. LLC v. Eclipse Resources I, LP*, 358

F. Supp. 3d 665, 675 (S.D. Ohio 2018).

The Court also declines Mr. Kantner's invitation to alternatively find ambiguity in

Section IV.A.9 and contort the language of the Policy to benefit him. *Id.* at 670 ("[A]mbiguity

exists only when a provision at issue is susceptible to more than one reasonable interpretation."

(internal quotations omitted)). Here, Mr. Leaventon's indemnification claim against Mr. Kantner

was "clearly and indisputably outside of the contracted policy coverage." *Cincinnati Ins. Co. v.

Robert W. Setterlin & Sons*, 2007 WL 2800383, at *3 (Ohio Ct. App. 10th Dist. 2007).

Accordingly, the Court finds that Travelers did not have a duty to defend Mr. Kantner.

Because there is no duty to defend, all three causes of action in the Amended Complaint fail as a

matter of law.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Partial Motion for Summary

Judgment (ECF No. 15) and **GRANTS** Defendant's Motion for Summary Judgment (ECF No.

14). Judgment is granted in favor of Travelers on all three counts of the Amended Complaint.

The Clerk is **DIRECTED** to **TERMINATE** this case from the docket records of the United

States District Court for the Southern District of Ohio, Eastern Division.

    **IT IS SO ORDERED**.

/s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE